# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| PEDRO CORTES, MARIA DEL ROSARIO TORRES, CARLOS GUTIERREZ, VICTORINA RUIZ, JUAN RAMIREZ, and HERLINDA PATINO, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-07-2744 |
| THE CITY OF HOUSTON and HARRIS COUNTY, TEXAS, | § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant City of Houston's ("City") Motion to Dismiss [Doc. # 45]. Plaintiffs have responded [Doc. # 47]. Because Plaintiffs requested that the Court consider matters outside of the pleadings in deciding the City's motion, the Court converted the motion to dismiss to a motion for summary judgment and invited the City to submit evidence in support of its position.[1] The City has replied [Doc. # 51].[2] Upon review of the parties' submissions, all pertinent matters of record, and applicable law, the Court concludes that the City's motion

---

[1]   *See* Order of Jan. 4, 2008 [Doc. # 49].

[2]   The City's reply was filed several days late and was accompanied by a Motion for Extension of Deadline [Doc. # 50]. Pursuant to the Court's authority under Federal Rule of Civil Procedure 16(b)(4), the City's Motion is **granted**.

should be **granted**.

## I.    <u>FACTUAL BACKGROUND</u>

The factual record is set out in more detail in the Court's Memorandum and Order of December 13, 2007 [Doc. # 46]. Briefly, this case concerns the constitutionality of several new and amended City of Houston ordinances, enacted pursuant to state legislation first passed in 2000,[3] and aimed at regulating the operation of "Mobile Food Units" ("MFUs").[4]  These provisions require MFU operators to visit a commissary to clean their units in the twenty-four hours preceding operation,[5] HOUSTON, TEX., CODE § 20-22(e), provide notarized proof of permission

---

[3]     The City ordinances were enacted to enforce amendments to the Texas Health and Safety Code, TEX. HEALTH & SAFETY CODE §§ 437.0074, 437.021. Plaintiffs originally named the State of Texas in this case, but subsequently dismissed that party without prejudice. *See* Stipulation of Dismissal [Doc. # 35], ¶ 3.

[4]     An MFU is defined as "a vehicle-mounted food establishment that is readily moveable." 25 TAC § 229.162(60); *see also* TEX. HEALTH & SAFETY CODE ANN. § 437.001(4).

[5]     Plaintiffs allege that this subsection "requires operators of MFU's [sic] to present proof of daily *inspection* at a commissary on demand."  Second Amended Complaint [Doc. # 38], ¶ 19 (emphasis added); Plaintiffs' Response to the City's Motion to Dismiss ("Plaintiffs' Response") [Doc. # 47], ¶¶ 9, 13.  As discussed in the Court's Memorandum and Order of December 13, 2007 ("December 2007 Order"), denying Plaintiffs' request for a preliminary injunction, this reference to an "inspection" is a material misinterpretation of the ordinance. *See* December 2007 Order [Doc. # 46], at 22–23.  Indeed, the Court is dismayed to see that Plaintiffs' attorney continues to describe this provision as requiring daily "inspections" of MFUs, despite uncontradicted testimony presented by the City during *two* evidentiary hearings on this matter, and the Court's December 2007 Order, definitively rejecting this interpretation of § 20-22(e).  *See id.*; *see also* Transcript of Nov. 20, 22, 2007 ("Nov. Transcript") [Doc. # 44]; Transcript of Sept. 4, 2007 Hearing ("Sept. Transcript") [Doc. # 31].  Moreover, the Court notes that the City stated its intent to begin enforcement of this provision in November 2007.  *See* Plaintiffs' Request for a Temporary Injunction [Doc. # 39], Ex. A: "Letter to Plaintiffs' Counsel from City Attorney." If, contrary to the testimony

(continued...)

to operate on private property, HOUSTON, TEX., CODE § 20-22(c)(4), operate within five hundred feet of a flushable toilet,[6] HOUSTON, TEX., CODE § 20-22(c)(5), and "demonstrate mobility at any reasonable time if requested by any peace officer or health officer," HOUSTON, TEX., CODE § 20-22(c)(7).

Plaintiffs, all of whom are Hispanic, operate MFUs in the City of Houston and/or Harris County. Plaintiffs assert that these City ordinances "violate the Equal Protection Clause [of the 14th Amendment]" and are "unduly vague."[7] The City now

---

[5]      (...continued)
presented to the Court, the City is in fact requiring proof of daily "inspections" of MFUs under § 20-22(e), the Court would expect Plaintiffs to offer some evidence of such. However, none has been provided. Thus, arguments grounded on a characterization of the daily commissary visit requirement of this provision as an "inspection" are rejected.

Plaintiffs are primarily Spanish-speakers who have testified as to their reliance on counsel to understand the requirements established by these City ordinances. *See, e.g.*, Nov. Transcript [Doc. # 44], at 44–45. Counsel is reminded of his ethical obligations to his clients to fairly and accurately inform them of their duties under the law, *see* TEX. DISCIPLINARY R. PROF'L CONDUCT preamble ¶ 2, and his Rule 11 obligations to this Court to pursue only those arguments that are legally and factually supported, *see* FED. R. CIV. P. 11(b). Counsel also is reminded of the Court's order that the December 2007 Order be translated into Spanish—a requirement designed to enable Plaintiffs to personally read the Court's ruling and the City ordinances, which were admitted into evidence during the November 2007 preliminary injunction hearing and attached to the December 2007 Order. *See* December 2007 Order [Doc. # 46], at 26; *see also id.*, Ex. 1: "City Ordinances Governing MFUs"; Ex. 2: "Markup of Amendments to City Ordinances Governing MFUs."

[6]      Subsections 20-22(c)(4) and (5) only apply to MFUs operating in a given location "for more than one hour in a single day." HOUSTON, TEX., CODE §§ 20-22(c)(4), (5).

[7]      *See* Second Amended Complaint [Doc. # 38], ¶¶ 1, 42; Plaintiffs' Response [Doc. # 47], ¶ 2. Although Plaintiffs appear to have alleged in their Complaint that these provisions are vague, in their Response, they make no arguments on this issue, which is mentioned, albeit only briefly, in the City's motion. *See* City's Motion to Dismiss [Doc. # 45], ¶¶ 6, 7. The Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district
(continued...)

seeks summary judgment on these claims.

## II.    <u>STANDARDS OF LAW</u>

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case for which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).   In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

For summary judgment, the initial burden falls on the movant to identify areas

---

[7]        (...continued)
court, that failure constitutes a waiver on appeal.  *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002) (citing *Dowthitt v. Johnson,* 230 F.3d 733, 747 n.16 (5th Cir.2000); *Johnson v. Puckett,* 176 F.3d 809, 814 (5th Cir.1999)).  By analogy, failure to brief an argument in the district court waives that argument in that court.  However, in the interests of justice, the Court addresses the merits of each claim fairly raised in Plaintiffs' Second Amended Complaint.

essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the non-moving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak*, 953 F.2d at 913). However, if the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *ExxonMobil Corp.*, 289 F.3d at 375.

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the non-moving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*,

336 F.3d 410, 412 (5th Cir. 2003).  However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.  *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden.  *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).  Instead, the non-moving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Finally, "[w]hen evidence exists in the summary judgment record but the non-movant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition

to summary judgment." *See id.* (internal citations and quotations omitted); *see also*

*De la O v. Hous. Auth. of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005).

## III.   ANALYSIS

### A.   14th Amendment – Equal Protection

Plaintiffs allege that the challenged City ordinances governing MFUs, HOUSTON, TEX., CODE §§ 20-22(c)(4), (c)(5), (c)(7), and (e), violate the Equal Protection Clause of the 14th Amendment by impermissibly classifying on the basis of ethnicity, or alternatively, by treating MFUs differently from free-standing restaurants.[8]  Applying either theory, the City is entitled to summary judgment.

Under the Equal Protection Clause of the 14th Amendment, different standards of review are applied depending upon the right or classification involved.  *Qutb v. Strauss*, 11 F.3d 488, 492 (5th Cir. 1993).

> Whether a claim made under the equal protection clause . . . will be successful depends critically on the standard of review that is applied to the state action complained of by the plaintiff.  Classifications created by

---

[8]   Plaintiffs allege in their Second Amended Complaint that the city ordinances classify on the basis of ethnicity and were enacted to "restrict commerce and discriminate against the Hispanics that earn a living in MFUs."  Second Amended Complaint [Doc. # 38], ¶ 15; *see also id.* ¶ 22 ("These statutes represent the intent of the Texas Legislature to discriminate against the MFU owners and workers; almost all of whom are of Hispanic descent."), ¶ 27, ¶ 28.  However, Plaintiffs' Response focuses solely on whether the ordinances impermissibly classify on the basis of mobility.  Because Plaintiffs have asked the Court to consider testimony presented at the November 20, 2007 evidentiary hearing in deciding the City's motion, *see* Plaintiffs' Response [Doc. # 47], ¶ 5, during which the Court considered Plaintiffs' ethnicity-classification claim, *see* December 2007 Order [Doc. # 46], at 13–17, the Court addresses herein both theories of Plaintiffs' equal protection claim.

state action which disadvantage a "suspect class" or impinge upon the exercise of a "fundamental right" are subject to strict scrutiny, and will be upheld only when they are precisely tailored to serve a compelling state interest. Classifications that disadvantage certain other groups, such as women, are subject to an intermediate level of scrutiny, and will be upheld only when they are shown to further a substantial interest of the state. Outside these categories, equal protection claims are analyzed under the rationality test. Under the rationality test, the state action need only bear a rational relationship to a legitimate state interest in order to be sustained.

*Clark v. Prichard*, 812 F.2d 991, 995 (5th Cir. 1987) (internal citations omitted).

Plaintiffs contend that the challenged city ordinances impermissibly create ethnic classifications, suggesting that because "the vast majority of . . . MFUs are operated by and employ Hispanic workers,"[9] the city regulations at issue necessarily classify on the basis of ethnicity.

"In many, if not most, equal protection cases, the classification to which the plaintiff objects is explicitly set out in the legislation under which the state acts. By using standards, qualifications, or criteria to control the scope and applicability of the legislation, the legislation itself classifies." *Mahone v. Addicks Utility Dist.*, 836 F.2d 921, 932 (5th Cir. 1988). The ordinances at issue in this case do not, on their face, make any classifications based upon the racial or ethnic background of MFU operators. Plaintiffs, recognizing this, rely on the Supreme Court's decision in *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), to argue that because—according to

---

[9]       Second Amended Complaint [Doc. # 38], ¶ 27.

Plaintiffs—MFU operators are predominantly Hispanic, the City ordinance unconstitutionally imposes burdens on Hispanics that are not placed on members of other ethnic groups.[10]

Plaintiffs' reliance on *Yick Wo* is misplaced as a matter of law.  It is true that "equal protection of the law requires not only that laws be equal on their face, but also that they be executed so as not to deny equality."  *Mahone*, 836 F.2d at 932 (citing *Yick Wo*, 118 U.S. 356).  In *Yick Wo*, a facially non-discriminatory city ordinance was found to violate the Equal Protection Clause when, in application, it became clear that the statute was enacted for a discriminatory purpose.  *Yick Wo*, 118 U.S. at 374. The statute at issue prohibited laundries from operating in San Francisco unless the operator received permission from the Board of Supervisors or operated in a building constructed of brick or stone.  *Id.* at 368.  The Court found that the Board permitted laundries to be operated in wooden buildings when the business owner was Caucasian, but denied similar approval to all Chinese operators.  *Id.* at 373.

---

[10]     *See id.* ¶¶ 22–25.  The Court, in its December 2007 Order, considered Plaintiffs' request that the Court take judicial notice of the fact that "most MFUs are operated by and employ Hispanics by driving by virtually any MFU in Houston."  *See* December 2007 Order [Doc. # 46], at 15 n.14; *see also* Second Amended Complaint [Doc. # 38], ¶ 27.  The Court declined Plaintiffs' request because the ethnicity and race of MFU operators are contested and thus not appropriate subjects for judicial notice.  Plaintiffs still have not offered any evidence to support their assertion that the MFU industry in Houston is made up predominantly of Hispanic operators and employees.  This factual deficiency alone is fatal to their claim, as Plaintiffs bear the burden of presenting evidence demonstrating the existence of a disputed issue of material fact.  *See Bejil v. Ethicon, Inc.*, 269 F.3d 477, 479 (5th Cir. 2001).  Absent some proof that the challenged ordinances discriminate on the basis of race or ethnicity, Plaintiffs' claim fails.

In this case, Plaintiffs have offered no evidence that the City has enforced in the past or is currently enforcing §§ 20-22(c)(4), (c)(5), (c)(7), and (e) of the Houston City Code differently based on the race or ethnicity of an MFU operator.[11]   Moreover, assuming *arguendo*, that Plaintiffs could prove that "most MFUs are operated by Hispanics," it does not follow that the statute is necessarily unconstitutional.  Ever since the Supreme Court decided the seminal case of *Washington v. Davis*, 426 U.S. 229 (1976), it has been axiomatic that legislation does not offend the Constitution merely because it may, or actually does, have a disparate impact on members of a certain racial or ethnic group.  Instead, challenges to a law must show that the legislation was enacted for a "racially discriminatory purpose."  *Id.* at 240.  Only "[o]nce racial discrimination is shown to have been a 'substantial' or 'motivating' factor' [behind enactment of a statute, does] the burden shift[] to those supporting the government action to show that the same course would have been pursued absent the discrimination."  *Walker v. City of Mesquite*, 402 F.3d 532, 535 (2005) (quoting *Hunter v. Underwood*, 471 U.S. 222, 228 (1985)).

In this case, Plaintiffs' counsel has asserted that the City Council enacted §§ 20-22(c)(4), (c)(5), (c)(7), and (e) for a racially discriminatory reason and are motivated

---

[11]    The Court notes again that the challenged ordinances have presumably been enforced since November 2007 and that Plaintiffs have offered no evidence that the City has engaged in any discriminatory enforcement against Hispanic operators or workers.  Similarly, Plaintiffs have adduced no evidence that predecessor ordinances to those challenged here—in effect since 2000—have ever been disparately enforced against Hispanics.

by a "racist agenda"[12] to "shut down the MFUs."[13]  However, to date, Plaintiffs have

produced no supporting evidence for this inflammatory proposition.[14]  Plaintiffs thus

have failed to demonstrate that these City ordinances were intended to, or in fact do,

classify regulated and unregulated parties on the basis of race or ethnicity.[15]

Therefore, "[s]ince this case does not concern a suspect or quasi-suspect classification

such as race or sex, to which heightened scrutiny is given, the equal protection clause

requires only a minimum degree of rationality."  *Reid v. Rolling Fork Public Utility*

*Dist.*, 854 F.2d 751, 754 (5th Cir. 1988) (citing *City of Cleburne v. Cleburne Living*

*Center, Inc.*, 917 U.S. 432, 439–42 (1985)); *see also Mahone*, 836 F.2d at 934 n.12.

---

[12]     Nov. Transcript [Doc. # 44], at 108.

[13]     Plaintiffs' Response [Doc. # 47], ¶ 8.

[14]     It must be noted that should the City choose to eliminate MFUs from the City altogether, it is entitled to do so.  *See New Orleans v. Duke*, 427 U.S. 297, 304–05 (1976) (holding that a city could conclude that mobile vendors have "a deleterious effect on the economy of the city" and could, accordingly, "substantially curtail[]" their operation, "if not totally ban[]" them).

[15]     Plaintiffs have offered virtually no evidence in support of any of the claims raised in their Second Amended Complaint.  However, the Court notes that many of the allegations raised, even if proven, fail to establish that the challenged City ordinances are unconstitutional.  For example, Plaintiffs allege that an unnamed "sponsor and/or legislative supporter" of the State statutes related to the challenged City ordinances stated that the intent of the State provisions was to "eliminate the 'eyesores' that are 'popping up like daisies' so as to prevent Houston from becoming a 'third-world area.'"  Second Amended Complaint [Doc. # 38], ¶ 26.  Plaintiffs suggest that this comment is evidence of discriminatory intent.  The Court is unpersuaded.  First, "third world" countries obviously are not limited to "Hispanic" regions of the world; nor does the Court accept Plaintiffs' unsubstantiated position that "most Hispanics . . . are from what is commonly described as the third world." *Id.* ¶ 28.  Moreover, "preserv[ing] the appearance and custom valued by [a city's] residents and [keeping a city] attractive to tourists" has been deemed by the Supreme Court to be a legitimate legislative goal.  *New Orleans*, 427 U.S. at 304.

"Applying the legislative model, an equal protection violation does not arise if there is any basis for a classification or official action that bears a debatably rational relationship to a conceivably legitimate governmental end." *Reid*, 854 F.2d at 754 (citing *Shelton v. Coll. Station*, 780 F.2d 475, 482 (5th Cir. 1986); *Stern v. Tarrant County Hosp. Dist.*, 778 F.2d 1052, 1056 (5th Cir. 1985)).  In fact, "[a]s long as there is *a* conceivable rational basis for the official action, it is immaterial that it was not *the* or *a* primary factor in reaching a decision or that it was not *actually* relied upon by the decisionmakers or that some *other* nonsuspect irrational factors may have been considered." *Id.* (citing *Mahone*, 836 F.2d at 934; *Shelton*, 780 F.2d at 481–82) (emphasis in original); *see also Stern*, 778 F.2d at 1056 ("In equal protection terms, if the legislative purpose be legitimate, a challenge may not prevail so long as the question of rational relationship [to legislative purpose] is at least debatable.").  To that end, "[s]tates are not required to convince the courts of the correctness of their legislative judgments.  Rather, 'those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the government decisionmaker." *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981) (quoting *Vance v. Bradley*, 440 U.S. 93, 111 (1979)); *see also Home Depot, Inc. v. Guste*, 773 F.2d 616, 621 (1985) ("[I]n suits involving a challenge to the rational basis

of a statute, the burden is not upon the state to establish the rationality of its statute, but is upon the challenger to show that the restriction is wholly arbitrary."). Moreover, "[t]he general rule is that legislation is presumed to be valid . . . ." *City of Cleburne*, 473 U.S. at 442.   "[W]here individuals in the group affected by a law have distinguishing characteristics relevant to interests the State has the authority to implement, the courts have been very reluctant . . . to closely scrutinize legislative choices as to whether, how, and to what extent those interests should be pursued." *Id.*

To the extent Plaintiffs are challenging the City ordinances on the ground that they impermissibly distinguish between MFUs and free-standing restaurants, Plaintiffs' challenge fails.  First, the City's decision to distinguish MFUs from free-standing restaurants is fully acceptable under the Constitution.  *See, e.g.*, *Lieberman v. Van De Carr*, 199 U.S. 552, 563 (1905) ("It is primarily for the State to select the kinds of businesses which shall be the subjects of regulation, and if the business affected is one which may be properly the subject of such legislation, it is no valid objection that similar regulations are not imposed upon other businesses of a different kind."); *see also New Orleans*, 427 U.S. at 303 ("States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude."); *Zucht v. King*, 260 U.S. 174, 176 (1922) ("[I]n the exercise of the police power

reasonable classification may be freely applied and that regulation is not violative of the equal protection clause merely because it is not all-embracing.").[16]

Second, the power of the state to enact health and safety legislation is expansive. *See Romer v. Evans*, 517 U.S 620, 632 (1996) (gathering cases); *Lieberman*, 199 U.S. at 558 ("The right of the State to regulate certain occupations which may become unsafe or dangerous when unrestrained, in the exercise of the police power, with a view to protect the public health and welfare, [is well established].").   Indeed, there is a longstanding and clear public interest in ensuring that eating establishments are sanitary and that waste is properly disposed of. *See, e.g.*, *Ex parte Baker*, 127 Tex. Crim. 589, 595 (1934) ("A city or town may under its police power make and enforce within its limits any traffic, sanitary, or health regulations which are not in contravention of the organic law of the land . . . ."); *Tomassi v. San Antonio*, 268 S.W. 273, 274 (Tex. App.–San Antonio 1924, writ ref'd)

---

[16]   Plaintiffs also complain that this ordinance is based upon state law that impermissibly applies only to MFUs operating in "[a] county with a population of at least 2.8 million," TEX. HEALTH & SAFETY CODE ANN. § 437.0074.  *See* Second Amended Complaint [Doc. # 38], ¶¶ 28–29.  However, the Court notes that dozens of state laws target cities and counties in this manner, including at least one that also applies to free-standing restaurants. *See* TEX. HEALTH & SAFETY CODE ANN. § 437.0074(a) ("A county with a population of at least 2.8 million may require a trained food manager to be on duty during the operating hours of a food establishment.").  "It is well-settled that 'as long as a classification is rationally related to a legitimate state objective, a legislature is allowed to attack a perceived problem piecemeal.'" *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 389 (5th Cir. 2001) (quoting *Jackson Court Condominiums, Inc. v. New Orleans*, 874 F.2d 1070, 1079 (5th Cir. 1989); *see also Katzenbach v. Morgan*, 384 U.S. 641, 657 (1966).  Thus, Plaintiffs' equal protection challenge, to the extent it is premised on this theory, fails.

("In every case brought to the notice of this court, in which regulation of markets . . . was involved, the right of the city to pass and enforce ordinances reasonably calculated to protect the citizen in the purchase of sanitary food has been upheld . . . ."). Therefore, the Court's inquiry in this matter is confined to whether the City's decision to regulate MFUs differently from free-standing restaurants conceivably could be related to a legitimate government purpose. *See Women's Med. Ctr. v. Bell*, 248 F.3d 411, 419 (5th Cir. 2001).

The Court is satisfied that the City Council could conclude that MFUs pose a unique threat to public health and that the challenged ordinances are rationally designed to minimize that risk. MFU's, unlike free-standing restaurants, lack a physical connection to a plumbing system and generally have no running water, sewage disposal, or on-site grease and waste disposal facilities. Thus, a statutory provision requiring MFU operators to demonstrate compliance with cleaning standards, as HOUSTON, TEX., CODE § 20-22(e) does, rationally addresses concerns about hygiene, waste, and environmental damage. The same can be said for a requirement that MFU employees—who prepare and serve food to the public—have access to flushable toilets. *See* HOUSTON, TEX., CODE § 20-22(c)(5).

The fact that MFUs are mobile also raises legitimate issues that the City Council could rationally address through the challenged legislation. The City could

be legitimately concerned about trespassing and the liability that landowners might unwittingly assume from MFUs operating on their property. A requirement that MFU operators secure permission to operate on private property is rationally related to addressing this concern. *See* HOUSTON, TEX., CODE § 20-22(c)(4).[17] Similarly, given the legitimately disparate regulations governing free-standing and mobile food service establishments, and the City's rational desire to ensure that MFUs do not become permanent fixtures at an operating location,[18] the requirement under § 20-22(c)(7) that MFU owners be prepared to demonstrate "mobility" at a "reasonable" time is not irrational.

Finally, Plaintiffs' contentions that these City ordinances are unwise,

---

[17]    Plaintiffs assert that § 20-22(c)(4) would require MFUs "to solicit permission from the Governor" to operate near road or highway construction projects. Second Amended Complaint [Doc. # 38], ¶ 31. This is a misreading of the ordinance. Section 20-22(c)(4), by its terms, only applies to MFUs operating on "private property for more than one hour in a single day." HOUSTON, TEX., CODE § 20-22(c)(4); *see also* Sept. Transcript [Doc. # 31], at 65–66. Moreover, the one hour limit is significant; the City "surveyed many mobile units and [found that] very few of them are [operating in a single location] for more than an hour." *Id.* at 67.

Plaintiffs also claim that, at least with regard to construction sites, "[t]he actual owners [of the property] do not know who is coming on the premises, nor do they care." Second Amended Complaint [Doc. # 38], ¶ 31. There is no admissible evidence to support this assertion. However, even if true, the analysis and outcome do not change. "Where there was evidence before the legislature reasonably supporting the classification, litigants may not procure invalidation of the legislation merely by tendering evidence in court that the legislature was mistaken." *Clover Leaf Creamery*, 449 U.S. at 464.

[18]    *See* Sept. Transcript [Doc. # 31], at 47, 51–53.

inefficient, imperfect, and impractical[19] are unavailing.  The City is entitled to address a perceived problem "'one step at a time . . . select[ing] one phase of one field and apply[ing] a remedy there, neglecting the others.'"  *Harrison-Allentown, Inc. v. McGinley*, 366 U.S. 582, 592 (1961) (quoting *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489 (1955)); *see also Roschen v. Ward*, 279 U.S. 337, 339 (1929) ("A statute is not invalid under the Constitution because it might have gone farther than it did, or because it may not succeed in bringing about the result that it tends to produce."). Further, "if a regulation, enacted by a competent public authority avowedly for the protection of the public health, has a real, substantial relation to that object, the courts will not strike it down upon grounds merely of public policy or expediency."  *Cal. Reduction Co. v. Sanitary Reduction Works*, 199 U.S. 306, 318–19 (1905).

Simply put, "the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines."  *New Orleans*, 427 U.S. at 303 (citing *Day-Brite Lighting, Inc. v. Missouri*, 342 U.S. 421, 423 (1952)).  "[I]t is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment."  *Id.* (citing *Ferguson v. Skrupa*, 372 U.S. 726, 732 (1963)); *see also City of Cleburne*, 473 U.S. at 442 ("When social or economic

---

[19]      *See* Second Amended Complaint [Doc. # 38], ¶¶ 28–33.

legislation is at issue, the Equal Protection Clause allows the States wide latitude and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic process." (internal citations omitted)).   Plaintiffs have failed to meet their burden of demonstrating the existence of a question of material fact as to whether the challenged city ordinances violate the Equal Protection Clause of the Fourteenth Amendment.  Therefore, the City is entitled to summary judgment on all of Plaintiffs' equal protection claims.

### B.   <u>Void-for-Vagueness</u>

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (collecting authority).  "A statute is unconstitutionally vague if it does not give 'a person of ordinary intelligence a reasonable opportunity to know what is prohibited.'" *Groome Resources, Ltd. v. Parish of Jefferson*, 234 F.3d 192, 217 (5th Cir. 2000) (quoting *United States v. Bird*, 124 F.3d 667, 683 (5th Cir. 1997)).

"The void-for-vagueness doctrine has been primarily employed to strike down criminal laws."  *Id.* (citing *Okpalobi v. Foster*, 190 F./3d 337, 358 n.10 (5th Cir. 1999)).  "In the civil context, 'the statute must be so vague and indefinite as really to be no rule at all.'"  *Id.* (quoting *Boutiller v. INS*, 387 U.S. 118, 123 (1967)).  Moreover, "[e]ven if the outermost boundaries [of a statute] may be imprecise, any

such uncertainty has little relevance [where a litigant's] conduct falls squarely within the 'hard core' of the statute's proscriptions." *J&B Entm't v. City of Jackson*, 152 F.3d 362, 368 (5th Cir. 1998) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 608 (1973)); *see also Fernandes v. Limmer*, 663 F.2d 619, 636 (5th Cir. 1981) ("'We can never expect mathematical certainty from our language.' The minimal ambiguity presented in [the challenged statutes] is well within constitutional limits." (quoting *ISKCON v. Eaves*, 601 F.2d 809, 830 (5th Cir. 1979))).

In determining whether a statute is unconstitutionally vague, courts look, *inter alia*, to whether the statute "provide[s] definite standards for those who apply them." *Beckerman v. Tupelo*, 664 F.2d 502, 511 (5th Cir. 1981). Such standards may be found on the face of a statute or by reference to other authority that has defined otherwise ambiguous terms. *See, e.g.*, *J&B Entm't*, 152 F.3d at 368 (rejecting a void-for-vagueness challenge by noting that the language at issue—"serious literary, artistic, scientific, or political value"—has been "subject of a plethora of opinions handed down by state and federal courts throughout this nation in the quarter century since" they were introduced by the Supreme Court in its test for "obscenity"); *see also Basiardanes v. City of Galveston*, 682 F.2d 1203, 1210 (5th Cir. 1982) (Where an ordinance is not vague as applied to a litigant, the litigant may proceed on its facial vagueness challenge only if the ordinance's effect on—in this, as in most vagueness

cases—first amendment rights "is real and substantial and the language of the ordinance is not readily subject to a narrowing construction by state courts."). Moreover, "economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 498 (1982). Courts have also "expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.* (collecting authority). "And the Court has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Id.*

In this case, Plaintiffs have offered no evidence that §§ 20-22(c)(4), (c)(5), (c)(7), and (e) of the Houston City Code are unconstitutionally vague and the Court has discerned nothing in the language of the provisions to raise a genuine question of material fact about the constitutionality of these provisions from a vagueness standpoint.

      1.    **HOUSTON, TEX., CODE § 20-22(c)(4).** — As to § 20-22(c)(4),

requiring notarized proof of permission to operate on private property, the Court perceives nothing vague about the provision.  The only possible argument raised by Plaintiffs in this regard is premised on a misreading that the ordinance requires permission to operate on public property.[20]   In any event, Plaintiffs' argument addresses the law's perceived burdens, rather than to its lack of clarity.  Section 20-22(c)(4) is not void for vagueness.

**2.     HOUSTON, TEX., CODE § 20-22(c)(5).** — Section 20-22(c)(5) requires that MFUs operating in a single location for more than one hour per day be located within 500 feet of a flushable toilet.  Plaintiffs have failed to establish that the provision is unconstitutionally vague.  Indeed, the provision is quite clear and Plaintiffs make no argument, and offer no evidence, to the contrary.

**3.     HOUSTON, TEX., CODE § 20-22(c)(7).** — Plaintiffs allege with some specificity that § 20-22(c)(7), which requires that MFUs "demonstrate mobility at any reasonable time if requested by any peace officer or health officer," is vague.[21]   Plaintiffs argue that the provision's "reasonableness" requirement is too ambiguous to meet constitutional standards.  However, Plaintiffs offer no evidence to support their theory and a reading of the provision demonstrates the contrary.  "[A] statute is

---

[20]     *See supra* note 17.

[21]     *See* Second Amended Complaint [Doc. # 38], ¶ 33.

not void-for-vagueness merely because it uses the word 'reasonable' or 'unreasonable.'" *United States v. Krumrei*, 258 F.3d 535, 538 (6th Cir. 2001).  The term "reasonable" has restrictive significance that has been deemed sufficient to save a statute from a void-for-vagueness challenge.  *See, e.g.*, *Voinovich v. Women's Med. Prof'l Corp.*, 523 U.S. 1036, 1038 (1998); *Groome Resources*, 234 F.3d at 217; *Karlin v. Foust*, 188 F.3d 446, 468 (7th Cir. 1999); *St. Croix Waterway Ass'n v. Meyer*, 178 F.3d 515, 520 (8th Cir. 1999); *Kildea v. Electro-Wire Prods., Inc.*, 144 F.3d 400, 407 (6th Cir. 1998); *see also Coates v. City of Cincinnati*, 402 U.S. 611, 613 (1971) (striking down a city ordinance barring "conduct . . . annoying to persons passing by" on vagueness grounds because, *inter alia*, the ordinance "did not indicate upon whose sensitivity a violation [would] depend—the sensitivity of the judge or jury, the sensitivity of the arresting officer, or the sensitivity of a hypothetical reasonable man").  *But see Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553 (6th Cir. 1999) (holding unconstitutionally vague a City ordinance imposing *criminal* sanctions because its use of the term "reasonable" to guide law enforcement discretion was not amenable to a limiting interpretation in the unique and "ever-changing" context of "open water restrictions").

Moreover, "it is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of

the case at hand." *United States v. Powell*, 423 U.S. 87, 92 (1975).  Where, on a facial challenge to a law, an enactment does not reach constitutionally protected conduct, a vagueness claim will only succeed "if the enactment is impermissibly vague in all of its applications." *Hoffman Estates*, 455 U.S. at 495.

In this case, the challenged ordinance requires that MFU operators demonstrate "mobility" at a "reasonable time."  Plaintiffs query whether "[an] MFU . . . may be forced to shut down in the middle of a rush to show an officer that it can circle the block."[22]  Absent extraordinary circumstances, such a request by a peace officer likely would be "unreasonable," especially as "mobility" may be demonstrated in a variety of ways.  The City has expressed its concern that MFUs have evaded sanitation requirements and have become "permanent structures," erecting "decks, patios, carport covers, [and] canopies."[23]  With that in mind, demonstrating "mobility" will not necessarily require MFUs to drive around the block.  Mobility may be readily apparent on sight, or may be demonstrated circumstantially by producing proof of compliance with § 20-22(e)'s commissary visit requirement.  Indeed, given that MFUs are, by definition, "a vehicle-mounted food establishment that is readily moveable," 25 TAC § 229.162(60), it is somewhat unclear what burdens Plaintiffs contemplate §

---

[22]     *Id.*

[23]     *See* Sept. Transcript [Doc. # 31], at 51.

20-22(c)(7) will create.[24]

In any event, reasonableness in this context is governed by an objective standard and is no less ascertainable than with any other legal doctrine that relies on objective reasonableness.   Thus, while "[l]aws which vest public officials with unlimited discretion are void for vagueness," *Grayned*, 408 U.S. at 109, § 20-22(c)(7) places meaningful limits on the authority of peace and health officers enforcing the provision.  Plaintiffs have failed to demonstrate the existence of a question of material fact whether § 20-22(c)(7) is unconstitutionally vague.

**4.**     **HOUSTON, TEX., CODE § 20-22(e).** — In light of the testimony offered at the November 20, 2007,[25] and the lack of evidence offered by Plaintiffs to contradict that testimony, it is clear that § 20-22(e), which requires MFUs to be serviced at a commissary in the "24 hours preceding" operation, survives constitutional scrutiny.  The Court rejects Plaintiffs' repeated insistence that this provision requires a new "daily inspection" of MFUs.[26]   Rather, the Court reaffirms its earlier holding that this provision is abundantly clear.  The version of § 20-22(e)

---

[24]     As this Court has noted previously, if Plaintiffs' primary concern regarding these ordinances is that they no longer allow for easy evasion of the City's requirements of MFUs, the interest is not protectible.  *See* December 2007 Order [Doc. # 46], at 22–23.

[25]     *See id.*, at 8–12 (describing testimony offered during the November 20, 2007 preliminary injunction hearing).

[26]     As noted earlier, the reference to an "inspection" is a mischaracterization of the ordinance.  *See supra* note 5.

challenged by Plaintiffs is actually an amendment to an ordinance that required "daily" visits to a commissary.  The City's testimony and a review of both the old and amended versions of § 20-22(e) establish that the only meaningful change to the ordinance is the requirement that MFU operators visit a commissary in the "24 hours preceding" operation, rather than "daily," as was previously required.   There is nothing vague about this requirement; indeed, the change resolves a prior ambiguity. Plaintiffs have been subject to the remaining requirements of § 20-22(e) since 2000. No evidence has been presented to suggest that Plaintiffs have been unable to ascertain those requirements to which they have been subject for the last seven years.

Thus, Plaintiffs have failed to demonstrate that any of the challenged City ordinances are unconstitutionally vague.  Accordingly, the City is entitled to summary judgment on Plaintiffs' vagueness claims.

IV.  **CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that the City of Houston's Motion to Dismiss [Doc. # 45] is **GRANTED**.  The City is **DISMISSED** from this suit.  It is further

**ORDERED** that Plaintiffs' counsel shall have this Memorandum and Order translated—in writing—into Spanish.  Both the Spanish and English versions are to be distributed to each Plaintiff no later than **February 29, 2008**.  Plaintiffs' counsel

is responsible for the accuracy of the translation.  It is further

ORDERED that Plaintiffs are to file, by February 22, 2008, a declaration as to whether Plaintiffs intend to continue to pursue this case against Harris County, Texas.  If Plaintiffs intend to so proceed, they must submit an affidavit with facts based on personal knowledge establishing a viable factual basis for the claims against the County.  Plaintiffs also must submit a memorandum of law establishing why the proposed claims are justiciable—*i.e.*, ripe for decision and presenting a genuine case or controversy.  If Plaintiffs no longer wish to litigate this matter against the County, they must file, by February 22, 2008, a stipulation of voluntary dismissal, which may be filed without prejudice to the assertion of later claims, if and when such claims arise.

SIGNED at Houston, Texas on this **7<u>th</u>** day of **February, 2008**.

_____
Nancy F. Atlas
United States District Judge